Slip Op. 15-81

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| APEX FROZEN FOODS PRIVATE LTD., et al., | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No. 13-00283 |
| UNITED STATES, | **PUBLIC VERSION** |
| Defendant, | |
| and | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE and AMERICAN SHRIMP PROCESSORS ASSOCIATION, | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Denying plaintiffs' motion to amend the judgment.]

Dated: July 27, 2015

Robert L. LaFrankie and Matthew R. Nicely, Hughes Hubbard & Reed LLP, of Washington, DC, for plaintiffs.

Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were Benjamin C. Mizer, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Scott D. McBride, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Nathaniel Maandig Rickard, Andrew W. Kentz, and Jordan Charles Kahn, Picard Kentz & Rowe LLP, of Washington, DC, for defendant-intervenor Ad Hoc Shrimp Trade Action Committee.

*Elizabeth J. Drake*, *Terence P. Stewart*, and *Philip A. Butler*, Stewart and Stewart, of Washington, DC, and *Edward T. Hayes*, Leake & Andersson, LLP, of New Orleans, LA, for defendant-intervenor American Shrimp Processors Association.

Goldberg, Senior Judge:  In December 2014, the court issued an opinion and judgment in this complicated antidumping case.  The court ruled entirely for defendant the United States, but plaintiffs, Apex Frozen Foods Private Ltd. and others ("Apex" or "Plaintiffs"), chose not to appeal immediately.  Instead, they filed a motion to amend the judgment pursuant to USCIT Rule 59(a)(1)(B).  *See* Pls.' Mot. to Amend J., ECF No. 75 ("Pls.' Mot.").  The rule permits the court to revisit a case "for any reason for which a [rehearing] has heretofore been granted in a suit in equity in federal court," including to correct manifest errors of law or fact in the underlying opinion.  *Int'l Custom Prods., Inc. v. United States*, 38 CIT __, __, 991 F. Supp. 2d 1335, 1337 (2014) (internal quotation marks omitted).  In this vein, Apex argues that the court misapplied the principle of exhaustion and neglected to address an important legal argument in its prior effort.

After carefully considering the Plaintiffs' objections, the court denies the motion.  There were no mistakes of law or fact in the previous opinion that merit rehearing at this time.  And if the Plaintiffs disagree with the court's conclusions, they may raise their grievances to the Court of Appeals for the Federal Circuit—the usual venue for protesting the trial court's reasoning.

## BACKGROUND

Anyone who reads this should already be familiar with the court's decision in *Apex Frozen Foods Private Ltd. v. United States*, 38 CIT __, __, 37 F. Supp. 3d 1286 (2014).  That opinion explained how the agency calculates antidumping rates in reviews.  It also described the targeted dumping test, or the two-step statutory inquiry that Commerce follows when deciding whether to combine margins using the average-to-average ("A-A") or average-to-transactional

("A-T") method. *Id.* at __, 37 F. Supp. 3d at 1289−92. Because the reader can look there for context, the court confines the present discussion to the issue at hand: Whether the prior opinion properly dismissed arguments regarding the analysis at step two of the targeting test.

The targeting test's second step prevents the agency from using A-T unless there is good reason for it. After Commerce identifies targeted sales at the test's first step, the statute makes the agency explain whether the A-A method can account for targeted sales. If the answer is "yes," then Commerce must use A-A to set the antidumping rate, regardless of targeted sales. But if the answer is "no," then the agency may apply A-T to remedy dumping masked by the targeting. *See* 19 U.S.C. § 1677f-1(d)(1)(B)(ii) (2012). In this case, Commerce found that A-A could not account for dumping from targeted sales. It reached this conclusion by running what's known as the meaningful difference test. Commerce first calculated Apex's A-A rate without zeroing, and then it estimated the A-T rate with zeroing. Next it compared the two rates, and found that A-T rate exceeded the A-A rate by a meaningful (greater than 0.5%) margin. The difference between the rates suggested that A-A masked targeted dumping that A-T remedied. *See* Issues & Decision Mem. ("I&D Mem.") at 14−15, PD 279 (July 11, 2013). As a consequence, Commerce used A-T to produce a 3.49% final antidumping rate.

On appeal, Plaintiffs claimed that the meaningful difference test did not explain whether A-A could account for targeted dumping. *See* Pls.' Mot. for J. on Agency R. 19−20, ECF No. 36 ("Pls.' Br."). They made four legal arguments in support. First, Commerce zeroed under A-T but not A-A, which "effectively guarantee[d]" that the rates would differ. *Id.* at 22−23. Second, the agency "failed to articulate a clear and consistent standard for defining" what a meaningful difference is. *Id.* at 23−24. Third, Commerce had to consider whether A-A with monthly

averages could account for targeting.  *Id.* at 24−27.  And fourth, the agency had to consider

seasonal price variations when deciding whether A-A could remedy targeting.  *Id.* at 27−28.

To these contentions, Plaintiffs added another in the reply brief.  They argued that by

"comparing [antidumping] margins *derived from all sales*," the meaningful difference test

measured price differences from both targeted and untargeted sales.  Pls.' Reply Br. 10, ECF No.

53 ("Reply Br.").  They also noted that most of Apex's sales were not targeted.  Then later, at

oral argument, Apex offered a record document showing that [[          ]] of its sales were dumped

and targeted, and [[          ]] were dumped but not targeted.  Apex Prelim. Results Calculations

at Attach. 2, CD 228 (Mar. 4, 2013).  In view of these figures, Apex said the agency erred to use

A-T to calculate the final rate.  Because most of Apex's dumping was untargeted, much of the

difference between the A-A and A-T rates probably came from untargeted sales.  And because

untargeted sales widened the gap between the rates, Commerce could not infer, based on the size

of the gap, that A-A failed to account for targeted dumping.  The meaningful difference test may

have proven that A-T detected more dumping than A-A *generally*, but it did not show that A-A

could not account for targeted sales *in particular*, as the statute requires.  *See* Reply Br. 10.

The court rejected Plaintiffs' first four arguments on the merits.  *Apex*, 38 CIT at __, 37

F. Supp. 3d at 1295−1301.  It also dismissed the challenge that Apex cooked into the reply.  The

court began by characterizing the argument as a substantial evidence attack.  By remarking that

its untargeted dumping exceeded its targeted dumping, Apex appeared to be saying that the

decision to rely on A-T was unwarranted in light of the record.  *Id.* at 1296−97.  Judges usually

treat such fact-bound objections as substantial evidence arguments.  *See Universal Camera Corp.

v. NLRB*, 340 U.S. 474, 487−88 (1951) (holding courts must consider entire record, and proof

contrary to agency's choice, under substantial evidence review); *Mukand, Ltd. v. United States*,

767 F.3d 1300, 1305−07 (Fed. Cir. 2014) (holding record supported choice to use adverse facts

available).

After describing Apex's objection, the court held that the argument was not exhausted.  It

reasoned that to exhaust an argument, a party must mention the matter in its administrative case

brief, in a form that gives Commerce notice that the argument was made.  *See Apex*, 38 CIT at

__, 37 F. Supp. 3d at 1297.  By that yardstick, the court found that Apex had not exhausted its

objection.  Nothing in the case briefs alerted Commerce to the notion that most of Apex's

dumping was untargeted.  And Apex never said that the meaningful difference inquiry measured

mainly ordinary dumping instead of targeted dumping.  Because Plaintiffs never asked the

agency to consider these facts and contentions below, the court rejected the argument for failure

to exhaust.  *See id.*  The court also found that the argument was waived for similar reasons.

Apex had not raised its objection on appeal until the reply brief—and even then, Plaintiffs failed

to furnish comprehensive evidence in support until oral argument.  *Id.* at 1298.

## DISCUSSION

Now, in their motion to amend the judgment, Plaintiffs accuse the court of making two

legal errors in its prior opinion.  First, they say the court applied the wrong standard when it held

that the substantial evidence argument was not exhausted.  *See* Pls.' Mot. 7−10.  Apex was

especially exercised by the court's reliance on *National Ass'n of Clean Air Agencies v. EPA*, 489

F.3d 1221 (D.C. Cir. 2007).  The case holds that parties must raise their arguments with

"reasonable specificity" to exhaust administrative remedies.  *Id.* at 1231.

Second, Apex alleges that the court avoided deciding an important legal argument by

dressing it up as a substantial evidence issue and dismissing it on exhaustion grounds.  *See* Pls.'

Mot. 3−7.  Here is the overlooked objection in Plaintiffs' own words:  "Commerce failed to

explain why its normal A-A methodology cannot account for any purported targeted dumping."

*See id.* at 4 (internal quotation marks omitted).  Had the court fully engaged this grievance in its

opinion, Apex thinks it would have won a remand.

Neither of these arguments justifies rehearing or amendment.

## I.        The Court Applied the Correct Exhaustion Standard

The court begins with Apex's exhaustion claim.  In their motion, Plaintiffs argue that the

court set the bar too high by requiring an argument to be "reasonably explicit" to be exhausted.

Pls.' Mot. 8.  They insist that an argument is exhausted if the agency record contains "at least a

suggestion" of the objection on appeal.  *Id.*  Had the court used the latter standard, Apex says its

substantial evidence argument would have obtained judicial review.

But it is Apex who muddles the exhaustion standard, not the court.  The test invoked in

the original opinion was the same standard that's been used in trade cases for years.  According

to the Federal Circuit, our court has discretion to dismiss arguments if they are not exhausted.

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1381 (Fed. Cir. 2013).

And to exhaust an argument, a party must brief its grievance with "reasonable clarity," sufficient

to alert the agency to the alleged problem.  *Ad Hoc Shrimp Trade Action Comm. v. United States*,

36 CIT __, __, 882 F. Supp. 2d 1366, 1373 (2012); *Luoyang Bearing Factory v. United States,*

26 CIT 1156, 1186−87, 240 F. Supp. 2d 1268, 1297−98 (2002).  A party must not only name the

broad issue in dispute; it must also discuss the specific legal and factual points that support its

claim.  *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).  These

rules give Commerce a chance to "correct its own mistakes" before being hauled into federal

court.  *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

Apex objects, but the *Clean Air* case is not out of sync with these sensible guidelines.  In a nutshell, *Clean Air* holds that arguments must be "prominent and clear enough to place the agency on notice" to merit judicial review.  489 F.3d at 1231 (internal quotation marks omitted). Protests shrouded in ambiguity, or merely implied in the record, do not make the grade.  *See id.* The court sees nothing in this formula that is contrary to the typical exhaustion requirement in trade cases.  *See Ad Hoc Shrimp*, 36 CIT at __, 882 F. Supp. 2d at 1373.

In fact, the court applied a rule similar to the one in *Clean Air* in a case called *Guangxi Jisheng Foods, Inc. v. United States*, Slip Op. 13-112, 2013 WL 5340770 (CIT Aug. 23, 2013). There, the respondent gave Commerce factor-of-production information, but a reporting glitch made it look like the respondent withheld data for eight products.  When the agency chose to use adverse facts available, respondent objected (but only vaguely) that it had supplied the data requested.  *Id.* at *4.  Then on appeal, the respondent repeated that it had provided all of the information required of it.  But this time, it added that the eight products with missing data were reported in error.  (Apparently, a misaligned column in the database had produced faulty control numbers).  *Id.*  The court rejected the argument because respondent had not raised it before Commerce "with the clarity that it [did] . . . before this court."  *Id.* at *5.  Exhaustion demanded that the objection be stated with specificity, and not merely hinted in the case briefs.

By contrast, an understated argument may be exhausted if it formed the foundation of an objection below.  In *Diamond Sawblades Manufacturers Coalition v. United States*, Slip Op. 13-130, 2013 WL 5878684 (CIT Oct. 11, 2013), Commerce exempted respondent from submitting a Section E response.  The petitioners argued in their case brief that without Section E data, the respondent's net price and constructed export price would be skewed.  *Id.* at *12−13.  Then on appeal, petitioners claimed more generally that it was wrong not to issue the Section E questions.

Respondent countered that petitioners had failed to exhaust this argument, but the court

disagreed.  By protesting the problems caused by the lack of Section E data, petitioners also

disputed the choice to exempt respondent from the Section E survey.  The former objection

assumed the latter, and as a consequence, both arguments were exhausted.  *Id.*

After weighing these precedents, the court reaffirms its holding that the argument in the

reply brief was unexhausted.  *See Apex*, 38 CIT at __, 37 F. Supp. 3d at 1297−99.  Plaintiffs say

that they clearly implied their objection in memos to the agency, but their submissions gave no

notice that the gap between the A-A and A-T rates came mainly from untargeted sales.

For instance, in their case brief, Plaintiffs argued that zeroing guaranteed their A-T rate

would exceed their A-A rate.  Apex Case Br. at 23, PD 265 (Apr. 18, 2013).  But that implied

nothing about the ratio of Apex's targeted dumping to its untargeted dumping.  *See* Reply Br. 10

(arguing gap between rates did not prove A-A inadequate because difference came mainly from

untargeted sales).  By simple arithmetic, a zeroed rate must excel a nonzeroed rate if (1) there are

below-fair-value sales, and (2) there are above-fair-value sales to offset the below-fair-value

sales.  Whether those below-value sales are targeted or untargeted does not matter:  A zeroed rate

will outstrip a nonzeroed rate if all of the dumping is targeted, if none of the dumping is targeted,

or if the dumping is a mix of the two.  So to claim that zeroing opened a rift between the rates

did not assume, much less state with reasonable clarity, that the meaningful difference test

measured mostly untargeted dumping.  *Compare Guangxi*, 2013 WL 5340770, at *4−5 (rejecting

argument that lacked specificity), *with Diamond Sawblades*, 2013 WL 5878684, at *12−13

(accepting argument that was assumed in claim made below).  The size of the gap between the

rates revealed nothing about the sort of dumping that A-T unmasked.[1]

---

[1] If this is true—if the meaningful difference test did not show how much of the gap came from targeted or untargeted sales—then how, one might ask, could the comparison prove whether A-A (footnote continued)

Another of Plaintiffs' arguments—this one regarding the remedy phase—also failed to address the alleged flaw in the meaningful difference results.  At the end of its case brief, Apex urged the agency to apply A-T only to targeted sales when setting the final antidumping rate. Apex Case Br. at 25−26.  This implied that some of Apex's sales were dumped but not targeted. (If none of the untargeted sales were dumped, then Apex would not worry that A-T applied to untargeted sales, because A-A and A-T would yield the same null rate).  But even if *some* of the dumped sales were untargeted, that did not mean *most* of the dumped sales were untargeted. What is more, as the court wrote in its prior opinion, "[t]he agency would not naturally infer from an argument made at the remedy step" that untargeted dumping skewed the results of a prior stage in the analysis.  *Apex*, 38 CIT at __, 37 F. Supp. 3d at 1298.  Because Apex failed to alert the agency to its objection, the court correctly rejected it for want of exhaustion.  The argument was waived for similar reasons.

The court concludes with a point of clarification.  In its motion, Apex asserts that an argument is exhausted if the record contains "at least a suggestion" of the objection.  Pls.' Mot. 8.  But this formula misstates the law.  The case that coined the phrase, *Ningbo Dafa Chemical Fiber Co. v. United States*, 580 F.3d 1247 (Fed. Cir. 2009), does not mention the standard that trial courts follow to check if an argument was exhausted.  Instead, *Ningbo* gives the test that the appellate court uses to decide if the trial court abused its discretion to hear an argument *over* an

---

accounted for targeting?  The answer is easy.  If most or all of Apex's dumping was targeted, then the dumping exposed by A-T but not A-A was targeting that A-A masked.  *See Apex*, 38 CIT at __, 37 F. Supp. 3d at 1296 ("[B]y comparing Apex's nonzeroed A-A rate to its zeroed A-T rate, the agency found the precise amount of dumping— including dumping from targeted sales—that A-A masked.").  The agency probably assumed that most of Apex's dumping was targeted when it held that A-A could not account for targeted sales.  *See* I&D Mem. at 14−15.  And if this assumption was wrong, then plaintiffs bore the burden to make it known.  *See* 28 U.S.C. § 2639(a)(1) ("[I]n any civil action commenced in the Court of International Trade under section . . . 516A of the Tariff Act of 1930, the decision of . . . [Commerce] . . . is presumed to be correct.  The burden of proving otherwise shall rest upon the party challenging such decision.").  Yet Apex waited until the reply brief to discuss the ratio of targeted to untargeted sales and its effect on the meaningful difference analysis.  Thus the argument was not exhausted.

exhaustion objection.  The Federal Circuit will not reverse an affirmative exhaustion

determination if the record contains "at least a suggestion" of the argument in question.  *Id.* at

1259.  The initial decision is left to the judgment of the trial court, which may find that an

argument was exhausted if Commerce had notice of it.  *See Ad Hoc Shrimp*, 36 CIT at __, 882 F.

Supp. 2d at 1373 ("An argument raised in the case brief satisfies the administrative exhaustion

requirement if it alerts the agency to the argument with reasonable clarity and avails the agency

with an opportunity to address it." (internal quotation marks omitted)).  This is the test the court

applied in its original decision.

### II.     The Court Addressed All of the Plaintiffs' Arguments

Next, Apex accuses the court of avoiding a legal argument made on appeal.  In its lead

brief, Apex claimed that Commerce erred to use A-T to set the final antidumping rate.  Pls.' Br.

21−24.  Or more specifically, as Plaintiffs write it in the present motion, Commerce "failed to

explain why its normal A-A methodology cannot account for any purported targeted dumping,"

in accord with § 1677f-1(d)(1)B)(ii).  Pls.' Mot. 4 (internal quotation marks omitted).  Had the

court considered this claim instead of rejecting it as an ill-timed substantial evidence challenge,

Apex believes it would have clinched a remand.  *See id.* at 10−11.

Frankly, the court is baffled by the Plaintiffs' accusation.  In its prior opinion, the court

dedicated the entire second section to the issue Apex says was forgotten:  Whether "Commerce

inadequately explained why A-A could not account for dumping from targeted sales, or why

Commerce had to apply A-T instead."  *Apex*, 38 CIT at __, 37 F. Supp. 3d at 1294.  At the

beginning of the section, the court recounted verbatim the agency's explanation for why A-A

could not account for targeted dumping.  *Id.*  Then it considered each of the arguments Apex

made to attack that explanation.  These included (1) that it was wrong to zero one rate but not the

other to decide if A-A adequately explained targeting; (2) that Commerce failed to explain why a

0.5% difference between rates was meaningful; (3) that the agency had to address whether A-A

with monthly averaging could account for targeting; and (4) that Commerce had to consider

seasonal price variations before imposing A-T.  *Id.* at __, 37 F. Supp. 3d at 1294−95.  The court

carefully considered each of these arguments and denied them.  We also dismissed the argument

that Apex failed to exhaust, i.e., that it was unreasonable to find that A-A could not account for

targeting when a large portion of dumped sales were untargeted.  *See id.* at __, 37 F. Supp. 3d at

1297−99.  The court never certified that the agency's method was flawless; but it did conclude

that none of Plaintiffs' arguments proved the meaningful difference analysis was unreasonable.

   All this leads to an uncomfortable question.  If the court dedicated an entire section to the

legal claim Apex says the court failed to address—and if it rejected every argument made in

support—then what objection does Apex want us to address on rehearing?  Plaintiffs laud the

court for the way it framed the overarching issue:  "Apex alleges that Commerce inadequately

explained why A-A could not account for dumping from targeted sales, or why Commerce had to

apply A-T instead."  *See* Pls.' Mot. 3 (quoting *Apex*, 38 CIT at __, 37 F. Supp. 3d at 1294).  Yet

Apex faults the court for neglecting the following argument:  "Commerce failed to explain why

its normal A-A methodology cannot account for any purported targeted dumping."  Pls.' Mot. 4

(internal quotation marks omitted).  By the court's reckoning, the legal argument that Apex says

was overlooked is the same claim that the court considered and denied in its opinion.  So what

other argument might the Plaintiffs want the court to consider now?

   We have a guess.  In its motion, Apex criticizes the court for holding that the meaningful

difference test was reasonable.  In Plaintiffs' view, the method was unreasonable because it

compared "the entire margin—whether targeted or not—under A-A (without zeroing) to that

under A-T (with zeroing)," revealing the "amount of dumping that was purportedly masked by

A-A."  Pls.' Mot. 6 (internal quotation marks omitted).  Yet the statute requires Commerce to

explain why A-A cannot account for targeted dumping, not dumping in general.  *See* 19 U.S.C.

§ 1677f-1(d)(1)(B)(ii).  Apex wants the court to take "the next logical step" and invalidate the

method on legal grounds because it does not distinguish between targeted and untargeted sales.

Pls.' Mot. 6.

But this argument flies into the same headwind as the substantial evidence argument

rejected previously.  In the reply brief, Apex noted that its untargeted dumped sales outnumbered

its targeted dumped sales by a wide margin.  The Plaintiffs touted this ratio as proof that the gap

between the A-T and A-A rates measured mostly ordinary dumping, not targeted dumping as the

statute directs.  *See* Reply Br. 10.  Yet the court ultimately rejected the argument on exhaustion

and waiver grounds.  The Plaintiffs failed to mention the ratio of targeted to untargeted sales in

their case brief and in their lead brief on appeal, so the court declined to consider the legal

repercussions of the ratio in its opinion.  *See Apex*, 38 CIT at ___, 37 F. Supp. 3d at 1297−99.

The objection that Plaintiffs advance now falls for the same reasons.  Though they frame

it as a legal challenge, the argument Apex suggested in the motion to amend is materially the

same as its defunct substantial evidence objection.  The only difference is that the argument

made now is a level abstracted from its predecessor.  In the substantial evidence challenge, Apex

said it was unreasonable to apply A-T because most of the dumping revealed by the meaningful

difference test was not targeted; in the argument made now, Plaintiffs say it was unreasonable to

apply A-T because the meaningful difference test did not distinguish between targeted and

untargeted sales.  The objections are identical, except the latter has been scrubbed of data from

the record.  After scouring the case briefs and trial briefs, the court cannot find this high-level,

legal version of the argument mentioned anywhere, except in the reply.  *See* Reply Br. 10.  Like

its evidence-tethered sister, the argument was waived and not exhausted.

<u>**CONCLUSION AND ORDER**</u>

The court understands the consequences of its decision.  By rejecting Plaintiffs'

arguments on exhaustion grounds, the court has robbed Apex of what might have been a victory.

Apex and its cohorts will have to pay significant sums in antidumping duties as the result of an

administrative decision that may have been flawed.  To the casual observer, this seems unfair.

Yet it would be equally unfair to remand the decision when Commerce had no notice of

the argument below.  By law, the decisions of the Department of Commerce are presumed

correct until proven otherwise, and the plaintiff bears the burden to bring flaws to the agency's

attention.  28 U.S.C. § 2639(a)(1).  In this case—perhaps because of the complexity of the

matter, or perhaps due to carelessness by counsel in the administrative proceeding—Apex did

not do its job.  It never mentioned the ratio of targeted to untargeted sales, despite the fact that

the data were there on the record before the preliminary results.  Because of Apex's failings,

Commerce lost an opportunity to correct what might have been a mistake.  And the only way for

the agency to reconsider its decision now would be through a remand entailing significant legal

and factual nuance.[2]  To command that result would be unfair too.

Upon consideration of all papers and proceedings herein, it is hereby

**ORDERED** that Plaintiffs' Motion to Amend Judgment, ECF No. 75, is **DENIED**.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: July 27, 2015
            New York, New York

---

[2] At a minimum, the agency would have to consider whether its meaningful difference finding satisfied the statute in light of the ratio of targeted to untargeted dumping.  Or worse, Commerce might have to revamp its methodology entirely, portending even greater taxpayer expense.